UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23328-CIV-WILLIAMS/REID

PETER G. GERACE, JR.,

      Plaintiff,

vs.

MIAMI HERALD MEDIA COMPANY,
SUN-SENTINEL COMPANY, LLC,
JAY WEAVER, and
MARIO ARZA,

      Defendants.

_____/

**DEFENDANT JAY WEAVER'S MOTION TO DISMISS THE COMPLAINT**

      Defendant Jay Weaver, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the complaint [DE 1] because it fails to state a claim.  The grounds for this motion are:

## I.      THE ALLEGATIONS OF THE COMPLAINT

      Jay Weaver is a professional journalist.  Compl., at ¶5.  An article bearing Mr. Weaver's byline and entitled, *Feds arrest alleged New York crime family leader in South Florida on conspiracy charge*, was published in the online edition of *The Miami Herald* on March 2, 2021 (the "Article").[1]  *Id.* at ¶¶5, 9, 10; *see also* DE 1-1.[2]

---

[1] The complaint alleges that Defendant Miami Herald Media Company publishes *The Miami Herald*.  Compl., ¶¶3, 10.  That is not correct.  Miami Herald Media Company filed for bankruptcy relief under Chapter 11 on February 13, 2020, and has not published *The Miami Herald* since September 4, 2020.

[2] https://www.miamiherald.com/news/local/article249601538.html (last visited Nov. 7, 2022).

The Article reports that Plaintiff Peter G. Gerace, Jr. was arrested "by federal agents in Ft. Lauderdale on drug-related conspiracy charges," and that Plaintiff is "a nephew of reputed Buffalo mob boss Joseph A. Todaro, Jr." "who authorities say has headed the local mob . . . ." DE 1-1.

The Article reports: "Gerace is among six men targeted by federal prosecutors who have called the group the 'Italian Organized Crime' family of Western New York." Compl. at 9 (blue text and underlining in original). The blue, underlined part of that sentence is a hyperlink to an article that was published in the *Buffalo News* a few days before the Article was published. *See, e.g., Adelson v. Harris*, 973 F.Supp.2d 467, 483 (S.D.N.Y. 2013) (quoting *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 n.1 (2d Cir. 1997)) ("'a hyperlink is highlighted text or images that, when selected by the user, permit him to view another, related Web document'") (internal brackets and quotation marks omitted).

The linked *Buffalo News* article identifies Plaintiff and five other men (including Plaintiff's brother), and reports: "These six men – and others who know them – form the cast of characters in the latest effort by federal law enforcement to prosecute what government attorneys call the 'Italian Organized Crime' family of Western New York." The *Buffalo News* article is attached to this motion as Exhibit 1. (https://buffalonews.com/news/local/crime-and-courts/is-the-mob-back-feds-probe-buffalo-mafia-after-calling-it-all-but-dead/article_0a77da5e-72db-11eb-bc36-e7e3b5ffe74b.html) (last visited Nov. 7, 2022).[3]

---

[3] The Article is attached as an exhibit to the complaint and, consequently, is "part of the pleading for all purposes." *See* Fed.R.Civ.P. 10(c); *see also Gill as next friend of K.C.R. v. Judd*, 941 F3d 504, 511 (11th Cir. 2019). The Article includes a hyperlink to the *Buffalo News* article, and materials that are hyperlinked in an article that is attached to the complaint are considered to be contained within the "four corners" of the article/exhibit. *See, e.g., Adelson v. Harris*, 973 F.Supp.2d 467, 483-486 (S.D.N.Y. 2013); *Edwards v. Schwartz*, 378 F.Supp.3d 468, 501-02 (E.D. Va. 2019) (considering a document "without converting the motion to dismiss into one for summary judgment" because an exhibit to the complaint contained "active hyperlinks" to the document). And, ***wholly apart from that***, "courts may take judicial notice of documents such as

The Article also reports:

> Prosecutors identified [Plaintiff and his brother] as co-conspirators of Joseph Bongiovanni, a retired U.S. Drug Enforcement Administration agent who was arrested in 2019 on charges of accepting $250,000 in bribes to help drug dealers avoid arrest, including some the government says are connected to organized crime.

DE 1-1.

That information comes from an indictment that charges Plaintiff with multiple crimes. The Second Superseding Indictment – which was returned by a federal grand jury empaneled in the U.S. District Court for the Western District of New York – charges, among other things, that "defendant **GERACE**… was an individual whom the defendant **BONGIOVANNI** [the retired DEA agent] knew and had reason to know was involved in possession, use, and distribution of controlled substances, ___**and had reason to believe to be a member of, connected to, or associated**___ ___**with IOC**___ [Italian Organized Crime]."   Exhibit 2 at 23, ¶24 (all capitals and bold typeface in original; italics, underlining, and brackets added); *see also id.* at 2, ¶3 (defining IOC as Italian Organized Crime).[4]

---

the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)."  *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir, 2015) (parenthetical in original).

[4] Even though the Second Superseding Indictment is not attached to the complaint, it is nonetheless properly attached to this motion to dismiss because the Article's reporting of the federal criminal charges against Plaintiff, through an indictment in which the grand jury charges that Plaintiff is connected to and associated with what the indictment calls "Italian Organized Crime," is an express and central aspect of Plaintiff's claims against Mr. Weaver, and Plaintiff cannot dispute the authenticity of the indictment, which bears the PACER electronic filing information at the top of each page. *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley*, 304 F.3d at 1134).  Additionally, and independently, courts are permitted at the motion to dismiss stage to take judicial notice both of documents that are filed with courts and what is written in those filings (but not the truth of what is written in them). *See, e.g., Osheroff*, 776 F.3d at 811 n.4; *Kerruish v. Essex Holdings, Inc.*, 777 F. App'x 285, 293(11th Cir. 2019); *Baker v. Sepich*, 2021 WL 5768069, at **2-3 (S.D. Fla. Oct. 28, 2021).

Plaintiff's complaint arises from the Article and purports to state claims against Mr. Weaver for defamation (Count 1) and defamation *per se* (Count 2).  Specifically, Plaintiff alleges that there are a total of five sentences in the Article that are false and defame him.

One of the sentences is:  "Gerace is among six men targeted by federal prosecutors who have called the group the 'Italian Organized Crime' family of Western New York."  Compl. at 9 (blue text and underlining in original to show hyperlink).  As mentioned above, this sentence is the hyperlink to the earlier *Buffalo News* article.  Plaintiff alleges that "th[is] statement that Plaintiff is part of a group which comprises the 'Italian Organized Crime' family of Western New York is false and defamatory."  Compl. at ¶¶9; *see also id.* at 15-16, 25-26.

The other four sentences that Plaintiff alleges are false describe Plaintiff as being a "leader" or "a top member" of an alleged organized crime family:

1. "*Feds arrest alleged New York crime family leader in South Florida on conspiracy charge*" (title/headline of the Article)

2. "Federal agents arrested a top member of an alleged New York crime family in Fort Lauderdale in connection with a drug-conspiracy case in Buffalo." (caption under a photo of a judge's gavel)

3. "A top member of an alleged New York crime family was arrested Sunday by federal agents in Fort Lauderdale on drug-related conspiracy charges." (first sentence of the Article)

4. "Peter G. Gerace, Jr., a top member of an alleged New York crime family, is arrested in Fort Lauderdale." (caption beneath a police photograph of Plaintiff).

Compl., at ¶¶9, 16-19, 26.

Plaintiff does **not** allege that those sentences are false because they associate him with Italian Organized Crime.  Instead, the complaint alleges that those sentences "falsely charged the Plaintiff with the serious criminal activity of **leading** an organized crime family."  Compl., at ¶16 (emphasis added); *see also id.* at ¶18 ("By branding the Plaintiff as mafia boss . . .");  ¶19 ("By

falsely and maliciously describing the Plaintiff as a 'leader' and 'top member' of an Italian-American organized crime family . . . ."); ¶26 ("As stated above, the above-quoted false statements in the March 2, 2021 Miami Herald article calling the Plaintiff a 'leader' and 'top member' of an 'Italian Organized Crime' family wrongfully and falsely charge the Plaintiff with the serious criminal activity of **_leading_** an infamous organized crime family – also known as the 'mafia' – and therefore as being **_a mafia boss_**.") (emphasis added).

The claims against Mr. Weaver should be dismissed with prejudice because they fail to state a claim.

## II.    ARGUMENT

### A.    The Claims Against Mr. Weaver Should Be Dismissed Because The Complaint Does Not Allege Compliance With The Statutory Condition Precedent To Suit.

Plaintiff's complaint purports to assert claims against Mr. Weaver for defamation and defamation *per se* arising from allegedly false written statements contained in an article that was published in *The Miami Herald*.  There is a statutory condition precedent that must be satisfied before such claims can be asserted:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

*See* §770.01, Florida Statutes.  "Failure to comply with the notice provision of section 770.01 **_requires dismissal of the complaint_** for failure to state a cause of action."  *See Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1377 (Fla. 4th DCA 1997) (emphasis added); *see also Cousins v. Post-Newsweek Stations Florida, Inc.*, 275 So.3d 674, 680 (Fla. 3d DCA 2019) (quoting *Mancini*, 702 So.2d at 1377) (same).

Plaintiff's complaint does not allege that he complied with this statutory condition precedent before suing Mr. Weaver for allegedly false and defamatory written statements ("a libel") that were published in a newspaper.  Indeed, although Rule 9(c) of the Federal Rules of Civil Procedure permits a plaintiff to "allege generally that all conditions precedent have occurred or been performed," the complaint does not even do that.  The complaint is completely silent as to performance, occurrence, or compliance with applicable conditions precedent.  This means that Plaintiff's claims against Mr. Weaver must be dismissed for failure to state a claim.

**B.**  **The Complaint Fails To State A Claim Against Mr. Weaver Because The Five Allegedly False And Defamatory Statements Are Not Actionable.**

Putting aside, for a moment, Plaintiff's failure to comply with the statutory condition precedent, the claims asserted against Mr. Weaver in the complaint are subject to dismissal with prejudice because the five statements are not actionable.  This means that even if Plaintiff had alleged that he provided Mr. Weaver with pre-suit notice identifying the five sentences upon which Plaintiff is now attempting to sue (or even if Plaintiff were to seek to stay this action in order to belatedly comply with the statutory condition precedent, and later file an amended complaint premised upon those sentences), claims against Mr. Weaver based on those five sentences – whether asserted in this complaint or an amended one – are subject to dismissal with prejudice for failure to state a claim.

Plaintiff's two claims against Mr. Weaver are based on five allegedly false and defamatory statements contained in the Article, which can be broken down into two categories.

The <u>first category</u> – which consists of a single statement – reports prosecutors' allegations that Plaintiff is associated with organized crime.  That statement is:  "<u>Gerace is among six men targeted by federal prosecutors</u> who have called the group the 'Italian Organized Crime' family of

Western New York."  Compl. at ¶9; DE 1-1 (second paragraph of the Article) (blue text and underlining in original to show hyperlink).

The <u>second category</u> – which consists of four statements – relates to describing Plaintiff as a top member or a leader of an alleged crime family:

1.  *"Feds arrest alleged New York crime family leader in South Florida on conspiracy charge"* (title/headline of the Article)

2.  "Federal agents arrested a top member of an alleged New York crime family in Fort Lauderdale in connection with a drug-conspiracy case in Buffalo." (caption under a photo of a judge's gavel)

3.  "A top member of an alleged New York crime family was arrested Sunday by federal agents in Fort Lauderdale on drug-related conspiracy charges." (first sentence of the Article)

4.  "Peter G. Gerace, Jr., a top member of an alleged New York crime family, is arrested in Fort Lauderdale." (caption beneath a police photograph of Plaintiff).

Compl., ¶9; DE 1-1.  None of those statements is actionable, and the claims against Mr. Weaver should be dismissed with prejudice.  *See, e.g., Marder v. TEGNA, Inc.*, 2020 WL 3496447, at *3 (S.D. Fla. June 29, 2020) ("[C]ourts routinely dismiss defamation claims at the motion to dismiss stage.").

### 1.      The Applicable Law.

Each of those sentences – and the reasons that none is actionable – will be discussed, in turn, below.  However, before addressing the sentences, it is helpful first to address the principles that render them non-actionable.

First, the <u>substantial truth doctrine</u>. Falsity is one of the essential elements of defamation-related claims. *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008); *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation action.").  However, "[u]nder the substantial truth doctrine,

a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *See Smith v. Cuban American National Foundation*, 731 So.2d 702, 706 (Fla. 3d DCA 1999) (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)); *see also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999) (applying Florida law). "According to U.S. Supreme Court and Florida case law, falsity exists only if the publication is substantially and materially false, not just if it is technically false." *See Smith*, 731 So.2d at 707.

Put another way, "[a] 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *See id.* (quoting *Masson*, 501 U.S. at 517). Thus, instead of requiring perfect accuracy, what Florida "'law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial.'" *See McCormick v. Miami Herald Publishing Co.*, 139 So.2d 197, 200 (Fla. 2d DCA 1962) (quoting 53 C.J.S. Libel and Slander §122). The substantial truth doctrine is properly applied at the motion to dismiss stage. *See, e.g., Readon v. WPLG, LLC*, 317 So.3d 1229, 1234-35 (Fla. 3d DCA 2021) (affirming dismissal on the basis that the statements were substantially true); *Marshall v. Amerisys, Inc.*, 943 So.2d 276, 280 (Fla. 3d DCA 2006) (same); *Marder*, 2020 WL 3496447, at *5 (dismissing defamation claims based on the substantial truth doctrine).

Second, the privilege for fair and accurate reports of government and court documents:

> "The news media has been given a qualified privilege[5] to accurately report on the information they receive from government officials. This privilege includes the broadcast of the contents of an official document, so long as their account is reasonably accurate and fair, even if the official documents contain erroneous information."

---

[5] That this privilege is "qualified" means only that the report of the underlying *government or court documents* must be accurate. *See, e.g., Ortega*, 510 So.2d at 975.

*See Rigmaiden v. NBCUniversal Media, LLC*, 307 So.3d 918, 918 (Fla. 3d DCA 2020) (quoting *Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 502 (Fla. 3d DCA 1993)) (additional internal quotation marks omitted); *see also Marder v. TEGNA, Inc.*, 2020 WL 3496447, at *4 (dismissing defamation claims based on fair report privilege); *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 977 (Fla. 3d DCA 1987); *Huszar v. Gross*, 468 So.2d 512, 515-16 (Fla. 1st DCA 1985) (granting motion to dismiss); *Alan v. Palm Beach Newspapers, Inc.*, 973 So.2d 1177, 1179-80 (Fla. 4th DCA 2008); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997).   The press has no duty to determine the accuracy of the information it receives from government officials or documents before publishing fair and accurate reports of it.   *See Woodard*, 616 So.2d at 502-03; *Ortega*, 510 So.2d at 976.

Third, the wire service defense.  Florida courts "recognize that a republisher may rely on the research of the original publisher, absent a showing that the republisher had, or should have had, substantial reasons to question the accuracy of the articles or the *bona fides* of the reporter." *See Nix v. ESPN, Inc.*, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018) ("*Nix I*") (internal citations and quotation marks omitted) (granting motion to dismiss) *aff'd* 772 F. App'x 807, 813 (11th Cir. 2019) ("*Nix II*") (affirming dismissal of complaint) ("Here, AP – a reputable news source – published an article with a statement that was a substantially accurate summary of judicial proceedings.  Appellants did not assert facts to show, and there is nothing else to suggest, that ESPN or USA Today were negligent, reckless, or careless in relying on AP's content.  The district court thus correctly concluded that the republishers of this statement—ESPN and USA Today— prevail on their wire service defenses."); *Nelson v. Associated Press, Inc.*, 667 F.Supp. 1468, 1482-83 (S.D. Fla. 1987) (applying wire service defense).  With these principles in mind, attention can now be turned to the five sentence upon which Plaintiff is suing.

9

### 2.      The Sentence Reporting The Prosecutors' Allegations Of An Association With Organized Crime Is Not Actionable.

Plaintiff was indicted by a federal grand jury in Buffalo, New York on February 25, 2021. Ex. 2.  The indictment alleges that a DEA agent (who was indicted along with Plaintiff) "knew and had reason to know" that Plaintiff "was involved in possession, use, and distribution of controlled substances, ***and had reason to believe [Plaintiff] to be a member of, connected to, or associated with IOC [Italian Organized Crime].*" Ex. 1 at 23, ¶24 (emphasis and brackets added); *see also id.* at 2, ¶3 (defining IOC as Italian Organized Crime).

Three days later, on February 28, 2021, the *Buffalo News* (which is the newspaper of record in Buffalo, New York) published an article entitled, *Is the mob back?  Feds probe Buffalo Mafia after calling it all but dead.*  Ex. 1.  The *Buffalo News* article reports that Plaintiff and five other people "form the cast of characters in the latest effort by federal law enforcement to prosecute what government attorneys call the 'Italian Organized Crime' family of Western New York." *Id.*

The Article was published two days later, on March 2, 2022.  DE 1-1.  It reports, "[Gerace is among six men targeted by federal prosecutors](#) who have called the group the 'Italian Organized Crime' family of Western New York."  Compl., ¶9; DE 1-1.  The blue, underlined part of that sentence is a hyperlink to the *Buffalo News* article.  Plaintiff alleges that "th[is] statement that Plaintiff is part of a group which comprises the 'Italian Organized Crime" family of Western New York is false and defamatory."  Compl. at ¶¶9; *see also id.* at 15-16, 25-26.  There are two reasons that the claims against Mr. Weaver should be dismissed with prejudice to the extent they are premised upon that statement.

***First***, the statement is not actionable because it is a fair and accurate report of (1) the fact that Plaintiff was indicted and, thus, was targeted by federal prosecutors, and (2) the indictment's express allegations that Plaintiff is someone who the DEA agent "had reason to believe to be a

10

member of, connected to, or associated with IOC [Italian Organized Crime]." That Plaintiff disagrees with the indictment's allegations and asserts that they are false, does not change the fact that Mr. Weaver was privileged to fairly and accurately report the indictment's allegations. *See Rigmaiden*, 307 So.3d at 918 (Fla. 3d DCA 2020) (quoting *Woodard*, 616 So.2d at 502) ("This privilege includes the broadcast of the contents of an official document, so long as their account is reasonably accurate and fair, ***even if the official documents contain erroneous information***.") (emphasis added); *Ortega*, 510 So.2d at 977; *Huszar*, 468 So.2d at 515-16 (Fla. 1st DCA 1985) (granting motion to dismiss); *Alan*, 973 So.2d at 1179-80; *Stewart*, 695 So.2d at 362.

*Second*, the sentence is not actionable for the additional and independent reason that it falls squarely within the wire service defense. The sentence repeats the *Buffalo News*'s previous reporting that Plaintiff is among six people who are involved in the federal government's prosecution of Italian Organized Crime, and the sentence actually links to the underlying *Buffalo News* article. The complaint does not and cannot allege that Mr. Weaver was somehow negligent, reckless, or careless in relying upon the *Buffalo News*'s content. Consequently, the wire service defense bars Plaintiff's attempt to sue on this statement. *See Nix I*, 2018 WL 8802885, at *6 (granting motion to dismiss); *Nix II*, 772 F. App'x at 813 (affirming dismissal of complaint) ("Here, AP – a reputable news source – published an article with a statement that was a substantially accurate summary of judicial proceedings. Appellants did not assert facts to show, and there is nothing else to suggest, that ESPN or USA Today were negligent, reckless, or careless in relying on AP's content. The district court thus correctly concluded that the republishers of this statement—ESPN and USA Today—prevail on their wire service defenses."); *Nelson*, 667 F.Supp. at 1482-83.

Plaintiff's claims against Mr. Weaver should be dismissed with prejudice to the extent that they are premised upon the sentence in the Article that "Gerace is among six men targeted by federal prosecutors who have called the group the 'Italian Organized Crime' family of Western New York."

> **3.    Sentences Describing Plaintiff As A Top Member Or A Leader Of An Alleged Crime Family Are Not Actionable.**

As just addressed, the federal government clearly and indisputably alleges in the indictment that Plaintiff is someone who the DEA agent "had reason to believe to be a member of, connected to, or associated with IOC [Italian Organized Crime]."  Notwithstanding the government's charges that Plaintiff is involved with Italian Organized Crime, Plaintiff alleges that the following four sentences in the Article are false and defamatory because they describe Plaintiff as a top member or a leader of an alleged organized crime family:

1.    "*Feds arrest alleged New York crime family leader in South Florida on conspiracy charge*" (title/headline of the Article)

2.    "Federal agents arrested a top member of an alleged New York crime family in Fort Lauderdale in connection with a drug-conspiracy case in Buffalo." (caption under a photo of a judge's gavel)

3.    "A top member of an alleged New York crime family was arrested Sunday by federal agents in Fort Lauderdale on drug-related conspiracy charges." (first sentence of the Article)

4.    "Peter G. Gerace, Jr., a top member of an alleged New York crime family, is arrested in Fort Lauderdale." (caption beneath a police photograph of Plaintiff).

Compl. at ¶¶9; *see also id.* at 15-16, 25-26; DE 1-1.

Plaintiff does not and cannot allege that those four sentences are false for saying that Plaintiff is a member of, or otherwise associated with, Italian Organized Crime.  Indeed, that is what the federal government alleges and, as addressed above, accurate reports of the government's allegations are not actionable.  Plaintiff alleges instead that those statements are false and

12

actionable as defamation because he is not a top member or leader of the crime family of which the federal prosecutors allege he is a member.  Compl., at ¶16 ("The above quoted statements . . . falsely charged the Plaintiff with the serious criminal activity of *leading* an organized crime family." (emphasis added); ¶18 ("By branding the Plaintiff as mafia boss . . ."); ¶19 ("By falsely and maliciously describing the Plaintiff as a 'leader' and 'top member' of an Italian-American organized crime family . . . ."); ¶26 ("As stated above, the above-quoted false statements in the March 2, 2021 Miami Herald article calling the Plaintiff a 'leader' and 'top member' of an 'Italian Organized Crime' family wrongfully and falsely charge the Plaintiff with the serious criminal activity of *leading* an infamous organized crime family – also known as the 'mafia' – and therefore as being *a mafia boss*.") (emphasis added).

Plaintiff's attempt to sue on those four sentences is barred by the substantial truth doctrine because alleged errors in describing Plaintiff's rank or position in organized crime do not affect the gist or sting of the accurate reporting of the government's charges that Plaintiff is "a member of, connected to, or associated with IOC [Italian Organized Crime]."

 "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *See Smith*, 731 So.2d at 706 (citing *Masson*, 501 U.S. at 517); *see also Levan*, 190 F.3d at 1240.  "According to U.S. Supreme Court and Florida case law, falsity exists only if the publication is substantially and materially false, not just if it is technically false." *See Smith*, 731 So.2d at 707.  "A 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *See id.* (quoting *Masson*, 501 U.S. at 517).  Thus, instead of requiring perfect accuracy, what Florida "'law requires is that the publication shall be substantially true, and that

mere inaccuracies, not affecting materially the purport of the article, are immaterial.'"   *See*

*McCormick*, 139 So.2d at 200 (quoting 53 C.J.S. Libel and Slander §122).

It is indisputable that the indictment alleges that Plaintiff is a member of, connected to, or associated with Italian Organized Crime.   The Article's accurate reporting of the federal prosecutors' allegations is not rendered actionable by "mere inaccuracies" regarding Plaintiff's rank or stature within the alleged criminal organization because such alleged inaccuracies regarding  rank or position do not "affect materially the purport of the article."   The "gist" or sting" of the accurate reporting of the government's allegations – that Plaintiff is a member of, connected to, or associated with Italian Organized Crime – remains unchanged.   Plaintiff's complaint should be dismissed with prejudice to the extent it is premised upon those four sentences.

**C.     The Claim Against Mr. Weaver For Defamation *Per Se* Fails For The Additional Reason That There Is No Such Claim.**

As shown above, the cause of action against Mr. Weaver for defamation *per se* fails in the first instance because the complaint does not allege compliance with the statutory condition precedent to suit.   And, wholly apart from that issue, the claim for defamation *per se* fails because the underlying five sentences are not actionable.   Even if those two issues did not exist, the purported claim against Mr. Weaver for defamation *per se* would still have to be dismissed with prejudice because there is no longer any such claim:

> At common law, before [*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)], we said words amounting to libel per se necessarily import damage and malice in legal contemplation, so those elements need to be pleaded or proved, as they are conclusively presumed as a matter of law.   ***This statement is no longer accurate regarding a libel action against the media.*** Nonetheless, for purposes of pleading a negligence action against the media, labeling an action libel per se remains useful shorthand for giving a media defendant notice that plaintiff is relying upon the words sued upon as facially defamatory, and therefore actionable without resort to innuendo.

*Mid-Florida Television Corp. v. Boyles*, 467 So.2d 282, 283 (Fla. 1985) (internal citation and quotation omitted) (emphasis added); *see also id.* at 284 (Ehrlich, J., concurring specially) ("Libel per se is dead, and let no one read from this decision that this ghost which we find still persists lingers in any form other than as a shorthand term.").

Thus, although "defamation *per se*" is a "shorthand term" for referring to a situation where the words at issue are defamatory on their face – that is, that their defamatory meaning is apparent – it is well-settled that there is no such thing as a standalone claim for defamation *per se*.   This is an additional reason that the claim against Mr. Weaver for defamation *per se* should be dismissed with prejudice.

### III.   CONCLUSION

For these reasons, the two claims asserted against Mr. Weaver should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel. (305) 374-8500
Fax (305) 789-7799

By: /s/  Scott D. Ponce
Scott D. Ponce (FBN 0169528)
scott.ponce@hklaw.com

Counsel for Mr. Weaver

### CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, I filed this document using CM/ECF, which will serve a copy on all counsel of record.

By: /s/  Scott D. Ponce

#179969281_v1